GUBELE, Respondent, v. METHODIST DEACONESS HOSPITAL of Rapid City, et al, Appellants.

(225 N. W. 57.)

(File No. 6643. Opinion filed April 13, 1929.)

*Williams & Sweet,* of Rapid City, for Appellant.
*H. F. Fellows,* of Rapid City, for Respondent.

BROWN, J. This action was commenced by service of a relief summons by delivery of a copy thereof to C. J. Semans, secretary and a trustee of defendant hospital, on August 26, 1927. Defendant failed to answer, and judgment by default was entered against it on November 5. On November 26 defendant made a motion to set aside the default and for leave to answer, and from the order denying the motion it appeals. No complaint was served with the summons.

The affidavit of C. J. Seamans set forth that appellant is a charitable institution conducted as a public hospital under the management of the Women's Home Missionary Society of the M. E. Church; that its management is vested in a board of trustees consisting of 12 members, all of whom act without compensation, and the direct management of the hospital is under the charge of Elva L. Wade; that on the evening of August 26, 1927, the summons was served upon him at his home in Rapid City; that he had just returned by auto from a long and tiresome trip to Mitchell, and that he read said summons and laid it aside, intending to give it attention the next day; that on the following morning his three year old daughter, who had been ill for some days, was in an extremely serious condition, and Dr. Minty, who at the time and for 15 years prior thereto had been a member of the board of trustees of defendant institution, was in attendance upon his child, and as

Dr. Minty was about to leave his home on the 27th, after a visit to the child, Semans told him that he had got a notice from Fellows, to which Dr. Minty replied in substance, "Was it a written notice?" and affiant said it was, to which Minty replied: "Don't worry about that; we will take care of that when the time comes." That from this reply Semans assumed that Minty knew of the commencement of the action and would take the proper steps for a defense, and, acting on such assumption, he did not mention the service of the summons to any other officer of the defendant or give the matter any further consideration; that on his trip to Mitchell he had accepted a position as head of the Department of Philosophy and Psychology in the Dakota Wesleyan University, and his time and attention was wholly taken up with making arrangements for moving to Mitchell and absorbed by anxiety on account of the illness of his child, who had been taken to the hospital and remained there in a very serious condition until September 4; that his wife stayed in the hospital with the child practically all the time, night and day, and much of his own time was taken up by visits to the hospital; that he also had to make arrangements with the church in Rapid City for obtaining a release from his ministry there; and on account of all these things, and the fact that he had talked with Dr. Minty, he gave no further thought to the summons until he learned that judgment had been taken against the hospital and an execution issued.

Dr. Minty's affidavit set forth substantially the same statements as to the conversation Semans had with him, and he says that he assumed that the notice Semans referred to was doubtless only a demand or claim for damages; that he had heard rumors that Fellows was going to make a claim for damages on account of the death of plaintiff's child under the treatment given it at the hospital; and that he knew that an action could only be commenced by the service of a summons on some of the officers of defendant, and supposed there would be plenty of time to answer after the service of a summons. He also corroborated Semans' affidavit as to the illness of Semans' child, and stated that as soon as he heard that judgment had been taken and execution issued, he at once communicated with the attorneys Williams & Sweet, with the object of getting the judgment vacated and leave to answer. He stated that if the judgment is not vacated and permission granted to de-

fend, the defendant would be damaged not only by the amount of the judgment it would be required to pay, but its good reputation in business would be greatly injured if it be denied the right to submit evidence in support of its defense that the injury to plaintiff's child, alleged in the complaint, was not due to any negligence on the part of defendant. Minty further stated that he supposed and believed that if an action had been commenced it would be necessary to file some notice or papers in connection with it in the office of the clerk of the circuit court, and that having heard that Mr. Fellows was likely to make a claim for damages and probably commence action, he made inquiry by telephone of the clerk of the circuit court several times during the months of August and September and into the fore part of October, and was informed on each occasion that no such papers had been filed, and believing that no action had been commenced, he finally ceased to give it further thought, believing that nothing would come of it.

Homer W. Minish, a member of the board of trustees, made an affidavit quite similar to that of Dr. Minty, stating further that so far as he knew, none of the members of the board of trustees had any knowledge that a summons had been served, except C. J. Semans, and that if he had had any notice or knowledge that an action had been commenced, he would have immediately retained counsel and taken steps to interpose a defense.

No opposing affidavits were submitted.

■ ■ While this court has frequently announced the view that trial courts have a wide discretion in granting or refusing motions to relieve from judgments by default, it has also taken the position that the power to relieve from such a judgment is to be exercised liberally in furtherance of justice. Griswold Linseed Oil Co. v. Lee, 1 S. D. 531, 47 N. W. 955, 36 Am. St. Rep. 761; W. B. Foshay Co. v. Springfield Light & Power Co., 49 S. D. 92, 206 N. W. 239. In the last-cited case, while the discretion of the trial court had been exercised in granting relief from the default, the application did not disclose a more meritorious showing than the application in the case at bar. There it was held that an attorney's oversight to answer, due to the fact that the summons was left with him the night before the convening of the regular term of court in Charles Mix county, at which he had important litigation which diverted his attention, was sufficient ground for setting

aside the default. In the present case, the serious illness of Semans' child at the time the summons was left with him, and which continued for 8 or 10 days thereafter, the anxiety incident to finding a house to move his family to in Mitchell, the making of preparations for their departure as soon as the child should get well, and the fact that he had communicated to Minty that a notice had been received by him, which Minty assured him would be taken care of, seems to us sufficient to excuse the failure on Semans' part to give the matter further attention. Minty's supposition that if an action had been commenced some papers connected with it would necessarily be filed in the office of the clerk of the circuit court, and his frequent inquiry there for more than 30 days after the time that he had been informed notice had been given to Semans, relieved Minty from the imputation of inexcusable negligence.

It is our opinion, on the whole showing, that the circuit court ought to have granted the motion to set aside the default, and allowed defendant to answer, and the order appealed from is reversed.

SHERWOOD, P. J., and POLLEY, CAMPBELL, and BURCH, JJ., concur.